Chancellor Rutledge afterwards delivered the decree f, „ of the Court.
I.n this case there aye three questions for consideration.
*110 1st. Whether the defendant, T. Heyward as trustee under the will of his father, must account for the profits of rhe estate (called Varnezober’s,~) devised to his sonDaniel, v " or whether they should be applied towards his maintenance anc^ education, during his minority ?
gd. Whether the limitation over, of the plantation, called Callewashie, and the negroes, after the death of Benjamin without issue, is good, or whether it is not too remote and void ?
3d. The testator devised certain lands and negroes to his son Daniel during life, afterwards to be divided between his heirs male and female, as therein particularly mentioned, and in case of no such heirs, then the lands to be divided between the heirs of his sons Thomas and William for ever; & also the slaves. Daniel died without issue. The question is, whether Daniel, the son of T. Heyward, when in life, or his representative, is alone entitled to a moiety of the estate so devised to Thomas’s heirs; T. Heyward being still alive.
Upon the first question there can be no doubt but that the defendant being a trustee, must account for the profits of the estate, (called Vamezober’s) during his sons minority. Although the court are fully impressed with the idea that the defendant’s son might never have called him to an account, and we feel the strongest inclination under the particular circumstances of this case to direct that the profits of the estate should be applied towards his sons maintenance and education, yet as it has not appeared in the discussion of this case that the defendant was unable to maintain and educate his son, and as the cases in the books are pointedly against such allowance being made (even in cases where an allowance is directed by the will) where the father is of ability to do it, we think we are bound by such decision, and cannot decree the profits to be applied for such maintenance. The cases in this court, where maintenance has been allowed, have all gone upon the principle that the fathers were not in a situation to afford *111 a suitable maintenance to their children. However under the peculiar circumstances of this case, we think it is both just and equitable, that defendant be at liberty to bring in to account by way of discount, a charge for the work and labour of such of his negroes as he employed in erecting buildings and otherwise improving and putting in order the plantation belonging to his son.
As to the second question, respectingthe limitations over of the Callewashie plantation and negroes after the death of Benjamin withoutissue, it has been contended for complainant that Benjamin had only a conditional fee in the lands, and the reversion remaining in the testator, he might dispose thereof on the contingency of Benjamin’s dying without issue, and therefore that the devise over to Daniel and his heirs was good. That the bequest of the ne-groes being in the same clause, they were attached to the lands, and the same construction ought to hold, respecting them ; and that the words, in case he should die without lawful issue, should be construed as restricting the limitation to the dying without issue, at the time of his death; so that the limitation over of the personal estate is not too remote; that the court will lay hold of any circumstance, the most trivial to restrict those words, to the dying without issue, at the time of the death of the first devisee, to effectuate the intention of testator. That it was apparent from the words of the will that the testator intended the lands and negroes should go the same way by his coupling them together.
For defendant it was insisted that Benjamin had only an estate for life, or at most a fee conditional by implication in the lands ; and that Daniel the grandson, dying in his life time, the devise over could never take effect: that it therefore became a part of the residuary estate, to which the defendant N. Heyward was entitled by virtue of the residuary clause in testator’s will; that the words of the clause ought not to be restricted to Benjamin’s dying without leaving issue at his death, being general and unlimited ; and therefore that in this case, the absolute property *112 in the personal estate vested in Benjamin, and must be distributed according to law : that where the words in a of real estate, would give the devisee an es~ tate tail expressly or by implication, the same words used 'irx a disposal of personal estate, would vest the absolute property in the first taker.
The importance of this question arises more from the magnitude of the object in contest, than any great intricacy in it. The subject has been most elaborately discussed, and almost every case that could be found has been brought forward by the counsel. The infinite number of them tend more to perplex than elucidate the subject, and to shew the various opinions that have been entertained by the courts respecting such devises, and how anxious they have been to lay hold of any words in a will however trivial to discover the intentions of testator, and restrain the words dying without issue, to mean dying without issue living at the death of the first taker, in order to give efficacy to the devise over. This devise includes both real and personal estate, and therefore two questions arise out of it. 1st.— What estate Benjamin took in the lands, and 2d, what in the personal estate ? There is no doubt if the statute of intails was of force in this state, but that Benjamin would have had an estate tail in the land ; for it is laid down clearly in the books, that if lands are devised to one, and if he die before, or without issue, or not leaving issue, it is devised over, these limitations create an estate tail: but that statute not being of force, the estate he took was a fee conditional at common law; the reversion of the estate still remaining in the testator, which he had a right to dispose of, and which he has done in this clause to his grand son Daniel and his heirs. It therefore can never be considered as a part of testator’s residuary estate undisposed of by will, to which defendant Nathaniel is entitled, but must go to the legal representative of Daniel. As to the 2d question, respecting the personal estate, it is clearly settled, that where the words in the case of a real estate would give an estate tail, or an estate in fee conditional, a *113 limitation of personal estate by the same words, will pass the whole interest therein, unless there are some circumstances in the will which confine the generality of the expression, dying without issue, to the dying without issue then living, or living at the death of the first taker. If, however, there are no circumstances apparent to shew it was the intention of the testator to restrain the generality of those words, such devise over has been held void as being too remote. In almost all the cases previous to Beau-clerk and Dormer, there were some circumstances in the will which confined the generality of the expression to dying without issue then living, or without leaving issue. In. that case which seems to have settled the point, the words were general. “ I make Miss Dormer my sole heir and executrix, and if she die without issue, then to go to Beau-clerk ; and the devise over was held to be void. In the case before us, the words are general: the devise is of Callewashie, with the negroes to Benjamin, but in case he die without lawful issue, then to my grandson Daniel and his heirs. It runs upon all fours with the case of Beauclerk and Dormer, and there is no one circumstance in this that occurred in the others. We are therefore of opinion, that the whole interest in the personal estate vested in Benjamin, and it must be distributed agreeable to law.
The third question is on the devise over to the heirs of Thomas and William, of the estate devised to the testator’s son Daniel, on his dying without issue. Upon this clause of the will, the single question is, which of the children of the defendant Thomas are to take ? From the confused and inaccurate penning of this will in several of the clauses, it is with the greatest difficulty that the testator’s meaning can be come at, and it is only by referring to a^ nother part of the will, that we can with any degree of certainty ascertain that he means children, when he speaks of heirs ; because in the legal acceptation of the word heir, a man can have but one heir, and he cannot be known till his father’s death. The clause we refer to is that, where *114 in be directs his executors to dispose of the produce of hi» ■ estate for the benefit of his heirs, which word, in the case 7 oi^ Beauclerk vs. Dormer, the court construed to mean children.
All cases on the construction of wills, depend on the particular penning of the wills theniselves, and the state of the families to which they relate. If we take into consideration therefore, the situation of the testator’s family at the time of making his will, it will be found that his son Thomas had only one child, and that his son William was unmarried. The benefit intended by the testator, to their heirs was clearly future and contingent; because till the death of his son Daniel without issue, nothing was given to the children of Thomas and William; till then, nothing vested.
When the testator’s son Daniel died, Thomas had but one child, (at least it is not stated that he had another alive) and William had not any; therefore the estate Could not then vest; but it having been given to Thomas in trust, he continued in possession till the death of William, at which time it was ascertained who were the persons meant to be provided for by the testator; a division was accordingly made, and William’s representatives received their moiety of the estate so devised. We have reviewed with accuracy most of the cases cited on this point, but do not think that they apply to the present. In some of them it has been determined that children born after testator’s death could not take, unless their be a prior bequest of the estate for the life of another, (which is the present case.) In that case, all the children born in the life of the tenant for life will take ; but in this case none of the persons intended to be benefited by the devise were in esse at the death of testator or tenant for life, except Daniel, the grand son, who could not by any construction answer the description, or be within the intention of the testator, who undoubtedly had likewise in view, the future children of his sons Thomas and William. We are therefore of opinion, that Thomas being still living, it is uncertain how many *115 children he may have who will be entitled to share the o-flier moiety of the estate in question. Until his death, therefore, no division can take place. On that event the representative of his son Daniel will come in for his pro* . portion.
It is therefore ordered and decreed that the defendant Thomas do account for the profits of his son Daniel’s estate, (Varnezober’s) during the time he had the management thereof, and be allowed in discount a reasonable compensation for the work and labor of such of his negroes as he employed in erecting buildings and otherwise improving his son’s plantation. That a reasonable allowance be charged for the use of the Callewashie plantation front. Benjamin’s death: that the negroes belonging to Benjamin, be distributed among those who are entitled thereunto agreeable to law.
That the defendant Thomas do retain in his possession the moiety of the estate which was devised to his heirs by the testator, on the event of testator’s son Daniel dying without issue.
Costs to be paid out of the estate,